**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210424-U

Order filed February 1, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* I.L.-H., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0424 |
| | ) | Circuit No. 18-JA-340 |
| v. | ) | |
| | ) | |
| Keonna M.H., | ) | Honorable |
| | ) | Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices McDade and Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court's fitness and best interest determinations were not against the manifest weight of the evidence.

¶ 2     Respondent mother, Keonna M.H., appeals from an order of the circuit court terminating

her parental rights as to I.L.-H. On appeal, mother argues the court erred in determining that

mother was unfit and that it was in I.L.-H.'s best interest to terminate mother's parental rights. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4        On September 21, 2018, the State filed a juvenile neglect petition alleging that I.L.-H., (D.O.B. 02/01/2018) was neglected due to an environment injurious to her welfare pursuant to section 405/2-3 *et seq.* of the Juvenile Court Act of 1987. 705 ILCS 405/2-3 *et seq.* (West 2018). The petition alleged in relevant part that: (1) mother remained in a relationship with Orlando Laney despite nine documented instances of domestic violence between February 2017 and September 2018, some of which were witnessed by I.L.-H.'s siblings; (2) mother had a previous domestic violence incident with Shane Crawford in March 2012; (3) in July 2018, I.L.-H.'s sibling suffered a skull fracture that was determined to be an accident, however, mother repeatedly lied about the incident to law enforcement; (4) mother, Laney, and Crawford all have extensive criminal histories; and (5) mother was previously indicated by the Department of Children and Family Services (DCFS) for substantial risk of physical injury/injurious environment in June 2018.

¶ 5        Mother stipulated to the allegations lodged in the State's neglect petition, and the court adjudicated I.L.-H. neglected. Following a dispositional hearing, the court found mother unfit based on the contents of the neglect petition. The court ordered that mother cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that brought I.L.-H. into care. The court further ordered that mother perform drug drops, complete individual counseling, complete a domestic violence course, obtain and maintain stable housing, provide the assigned caseworker with any changes in mother's contact information, attend scheduled

visitations, use her best efforts to obtain a legal source of income, and participate in an integrated assessment.

¶ 6          On June 4, 2021, the State filed a petition to terminate mother's parental rights (termination petition), alleging mother was an unfit person as described in section 50/1(D)(m)(ii) of the Adoption Act, in that mother failed to make reasonable progress toward the return of I.L.-H. during the nine-month period from September 23, 2019, to June 23, 2020. 750 ILCS 50/1(D)(m)(ii) (West 2020). On July 20, 2021, mother filed an answer to the termination petition, stating:

> "[t]hat [mother] stipulates that the State would call witnesses at Adjudication who would support the allegations contained in ALL Counts of the Petition and does NOT demand strict proof thereof and that Respondent wishes to proceed to Best Interest Hearing."

¶ 7          The answer and/or stipulation was signed by counsel, and the certification was electronically signed by mother. On July 22, 2021, the parties held an initial hearing on the termination petition.[1] Following the hearing, the court entered an order reflecting that the court accepted mother's stipulation in the presence of mother and her attorney.

¶ 8          The parties proceeded to a best interest hearing on August 5, 2021. At the outset, the court considered, and without objection, took judicial notice of mother's stipulation to the parental unfitness portion of the termination petition.[2] Furthermore, mother made no attempt to offer evidence of any progress she believed she may have made during the relevant nine-month period alleged in the petition. Based on mother's stipulation, the court found the State had met its

---

[1]This hearing transcript is not included in the record on appeal.
[2]The court's adjudication order found a factual basis for mother's stipulation and found that the stipulation was made knowingly and voluntarily.

3

burden of proving mother unfit by clear and convincing evidence. Next, the court ensured the parties' receipt of I.L.-H.'s best interest hearing report, which was prepared by The Center for Youth and Family Solutions (CYFS).

¶ 9 The report provides that three-year-old I.L.-H. has resided in her current foster home since June 19, 2019, when she was approximately 15 months old. I.L.-H. has a positive attachment to her current caregivers, who are willing and able to adopt I.L.-H. I.L.-H.'s basic needs for food, shelter, health, and clothing are met by her current caregivers. I.L.-H.'s caregivers are diligent when attending to I.L.-H.'s medical and dietary needs. Since her placement in the foster home, I.L.-H. has made significant improvements to her speech, such that she was discharged from speech therapy. I.L.-H. has become socially on par with other children her age and is able to identify most shapes and colors. I.L.-H. attends daycare, where she has started talking about making friends. I.L.-H. makes crafts at daycare and enjoys playing outside. I.L.-H. also enjoys singing with the caregivers' daughter, Grace, and enjoys reading.

¶ 10 I.L.-H. refers to her current caregivers as mom and dad and has told her caseworker that she loves her foster family. I.L.-H. has scheduled visitation with mother twice weekly. I.L.-H. recognizes mother when she sees her and refers to her as mommy. However, I.L.-H. does not talk to the caseworker or mother at visits. Instead. I.L.-H. watches shows on mother's tablet or her phone. I.L.-H. does not understand the current legal situation.

¶ 11 At the conclusion of the report, the caseworker opined that it was in I.L.-H.'s best interest to terminate mother's parental rights. The caseworker recommended that I.L.-H.'s permanency goal be changed to adoption.

¶ 12 During the hearing, the author of I.L.-H.'s best interest report, CYFS caseworker, Annmarie Rhatigan, testified that I.L.-H.'s current caregivers provide for I.L.-H.'s emotional,

4

medical, safety, and security needs, as well as for her educational, food, clothing, and shelter needs. Rhatigan added that I.L.-H.'s caregivers are supportive of her background, including her family culture and identity. I.L.-H. exhibits a strong bond with her caregivers and feels secure and loved in her placement. I.L.-H. told Rhatigan that she wished to stay in her current placement, but Rhatigan did not believe I.L.-H. comprehended what was happening. Rhatigan stated that I.L.-H.'s caregivers were supportive of her return home goal through the pendency of the case but have since wished to adopt I.L.-H. after the court changed her goal to adoption.

¶ 13    Rhatigan testified that I.L.-H. has a stronger bond with her caregivers than with mother. However, I.L.-H. still has a bond with mother. During visits, mother and the other children, including I.L.-H., normally do some sort of activity, like jumping in a blow-up house. Oftentimes, I.L.-H. gets her hair done during visits while she plays with a tablet. I.L.-H. seems very absorbed in the tablet during visits, whereas she is more verbal when she is around her current caregivers.

¶ 14    Rhatigan opined that the best interest factors outlined in the Juvenile Court Act favored the termination of mother's parental rights. Rhatigan believed I.L.-H.'s need for permanency favored adoption. On cross-examination, Rhatigan testified that mother visited with I.L.-H. twice weekly for two hours, though Rhatigan was not present during the entirety of those visits.

¶ 15    Mother testified that visits occurred at her home on Tuesdays and Thursdays. During visits, I.L.-H. plays with a tablet. I.L.-H. also has a playroom full of toys, where she plays with her three siblings. I.L.-H. and mother share a bond. I.L.-H. calls mother "mommy." I.L.-H. is excited for visits and never indicates that she wants visits to end. I.L.-H. lays in mother's bed and wants to be held. Mother reads books to I.L.-H., and the pair watch movies together. The family also travels to the park to play. Mother recently bought I.L.-H. a bouncy house. Mother did not

5

believe it was in I.L.-H.'s best interest to terminate her parental rights. Mother explained that the older children "want to be returned home along with [I.L.-H.]."

¶ 16    I.L.-H.'s guardian *ad litem* recalled Rhatigan to testify. Rhatigan testified that upon the termination of mother's parental rights, I.L.-H. would continue to have visits with her siblings, but that the visits would be held at CYFS, rather than at mother's home. Rhatigan believed I.L.-H.'s caregivers would continue to foster a relationship between I.L.-H. and her siblings.

¶ 17    Based on the evidence presented, the testimony of the parties, the arguments of counsel, the best interest report, and the best interest factors outlined in section 1-3(4.05) of the Adoption Act, the circuit court terminated mother's parental rights. 705 ILCS 405/1-3(4.05) (West 2020). The court changed I.L.-H.'s permanency goal to adoption. Mother filed a timely notice of appeal.

¶ 18                              II. ANALYSIS

¶ 19    On appeal, mother argues the court erred in finding her unfit and that it was in I.L.-H.'s best interest to terminate her parental rights. We address mother's arguments in turn.

¶ 20                         A. Fitness Determination

¶ 21    The record reflects that mother stipulated to the fitness finding she now challenges on appeal. Nonetheless, mother argues the court erred in accepting her stipulation as to unfitness, where the record does not reflect "whether said stipulation was knowing or voluntary." The State points out that in a court order, dated July 22, 2021, the circuit court accepted mother's stipulation in the presence of mother and her attorney and that the hearing transcript from that date is not included in the record on appeal.

¶ 22    Indeed, the appellant has the duty of providing this court with a complete record of the proceedings on appeal to support his or her claim of error, and in the absence of such a record, we are to presume the order entered by the court was in conformity with the law and had a

6

sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Accordingly, any doubts arising from the incompleteness of the record must be resolved against the appellant. *Id*. at 392.

¶ 23      Even absent a complete record of the July 22, 2021, proceeding, the fact that mother filed an answer to the petition to terminate parental rights is indicative that she acted knowingly and voluntarily. That answer specifically stated that mother agreed the State's witnesses would support the allegations contained in the petition, and that she "does NOT demand strict proof thereof and *** wishes to proceed to Best Interest Hearing."

¶ 24      Further, of record is the fact that the circuit court took judicial notice of mother's stipulation, without objection from mother, several weeks later, on August 5, 2021, and found that the stipulation was made knowingly and voluntarily. Mother argues, on appeal, that the court failed to consider any progress she made during this relevant nine-month period, yet she made no effort to present any evidence of such progress at the hearing. Mother's failure to offer this evidence constitutes a waiver of the argument on appeal. Accordingly, the circuit court properly made its decision as to fitness on the only evidence before it: mother's knowing and voluntary stipulation to the fitness allegations contained in the termination petition. For these reasons, we affirm the circuit court's fitness determination.

¶ 25                          B. Best Interest Determination

¶ 26      In a proceeding to terminate parental rights, courts weigh the parent's fundamental liberty interest in the care, custody, and management of his or her child with the child's interest in a "normal family home." *In re D.T.*, 212 Ill. 2d 347, 363 (2004) (quoting *Santosky v. Kramer*, 455 U.S. 745, 759 (1982)). Once the State proves parental unfitness, the interests of the parent and the child diverge, and the court's focus necessarily shifts to the child's interest in "a loving,

stable and safe home environment." *Id.* at 363-64. At this stage, the State's burden of proof lessens to a preponderance of the evidence. *Id.* at 366. When considering whether the termination of parental rights serves the child's best interest, court's consider: (a) the physical safety and welfare of the child, including food, shelter, health, and clothing; (b) the development of the child's identity; (c) the child's background and ties, including familial, cultural, and religious; (d) the child's sense of attachment; (e) the child's wishes and long-term goals; (f) the child's community ties; (g) the child's need for permanence; (h) the uniqueness of every family and child; (i) the risks attendant to entering and being in substitute care; and (j) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) *et seq.* (West 2020). A circuit court's determination as to the best interest of a child will not be disturbed on appeal unless it is clearly against the manifest weight of the evidence. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. A best interest determination is against the manifest weight of the evidence only where the facts clearly demonstrate that the court should have reached the opposite conclusion. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006).

¶ 27    The record establishes that 3-year-old I.L.-H. came into the care of her current caregivers when she was approximately 15 months old. I.L.-H. has a strong bond with her current caregivers, who provide for I.L.-H.'s basic needs for food, shelter, health, and clothing. I.L.-H. feels secure and loved in her placement. I.L.-H. refers to her current caregivers as mom and dad. I.L.-H.'s caregivers are supportive of her background, including her family culture and identity. I.L.-H.'s caregivers would continue to support visits between I.L.-H. and her other siblings, even if mother's parental rights were terminated. Though I.L.-H. told Rhatigan that she wished to stay in her current placement, it appears I.L.-H. is too young to comprehend the current legal proceeding.

8

¶ 28 Importantly, I.L.-H. came into substitute care in September 2018. Yet, after almost three years, mother admitted in July 2021 that she remained unfit to parent I.L.-H. We realize that I.L.-H. has a bond with mother, but at this point in the proceeding, I.L.-H.'s need for permanency favors adoption. I.L.-H.'s current caregivers are willing and able to adopt I.L.-H. and give her the security and permanency she deserves. Based on the evidence and the statutory factors enumerated in section 1-3(4.05) *et seq*., we cannot say the circuit court's best interest determination was against the manifest weight of the evidence. We affirm the termination of mother's parental rights.

¶ 29                                    III. CONCLUSION

¶ 30         The judgment of the circuit court of Peoria County is affirmed.

¶ 31         Affirmed.